**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ANTOINETTE RENEE LAMPKIN, | § | |
| | § | |
| Plaintiff, *Pro Se* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:12-CV-03779 |
| | § | |
| AJILON PROFESSIONAL STAFFING | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS**

This matter was referred by United States District Judge Lee H. Rosenthal, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #17).  Before the court is a motion, which was filed by Defendant Ajilon Professional Staffing, Inc., to dismiss Plaintiff's complaint, under Rule 12(b)(6), for failure to state a claim on which relief can be granted, and under Rules 12(b)(4) and 12(b)(5), for insufficient process and insufficient service of process.  (Defendant's Motion to Dismiss Plaintiff's Complaint for Insufficient Process and Insufficient Service of Process and for Failure to State a Claim Upon Which Relief Can Be Granted ["Defendant's Motion"], Docket Entry #9). Plaintiff has responded to the motion, and Defendant has replied.  (Plaintiff's Motion to Dismiss Defendant's Motions for Insufficient Process and Service of Process, and for Failure to State a Claim ["Plaintiff's Response"], Docket Entry # 12); (Defendant's Reply to Plaintiff's Response to Defendant's Motion for Insufficient Process and Service of Process and for Failure to State a Claim Upon Which Relief Can Be Granted ["Defendant's Reply"], Docket Entry # 22).  After a review of the pleadings and the applicable law, it is **RECOMMENDED** that Defendant's motion be **GRANTED**, in part, and **DENIED**, in part, for the reasons detailed below.

1

**BACKGROUND**

In this action, Plaintiff Antoinette Renee Lampkin ("Plaintiff," "Lampkin") alleges that Ajilon Professional Staffing, Inc. ("Ajilon," "Defendant") unlawfully discriminated against her when she sought employment through that company.  Ajilion is an employment agency that specializes in administrative support positions.  (Plaintiff's Proposed Complaint, Docket Entry # 1, at 1 & Ex. 1). In February 2012, Lampkin applied for a legal assistant's position, but she failed to get the job. Plaintiff alleges that she was not hired, because, along with her application, she requested a schedule accommodation that would allow her to take her child to speech and occupational therapy two times a week. (Original Complaint at 3).  Lampkin claims that Ajilon never submitted her application to the client employer because of that requested accommodation. In this lawsuit, she alleges that Defendant's conduct amounts to discrimination under both the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964.  Because the procedural history of this case, to a certain extent, affects the outcome of Defendant's motion, the unique circumstances of the litigation must be outlined.

*Procedural History*

Plaintiff filed a charge of discrimination with the Texas Workforce Commission and the Equal Employment Opportunity Commission ("EEOC"), on May 4, 2012. (Case No. 12-mc-00742, Docket Entry # 1, Ex. 2); *see also* (Defendant's Motion, Ex. A). On the complaint form, Plaintiff was asked to check those boxes that corresponded to her claim of discriminatory treatment.  Options are provided on the EEOC form to designate discrimination based on race, color, sex, religion, national origin, retaliation, age, disability, and genetic information.  Plaintiff checked only the box designated "disability."  (*Id*.).  On the charge form, she elaborated that she "believe[d] that [she] was not considered for the [legal assistant] position due to [her] request for time off to care for [her] child with a disability."  (*Id*.).  After investigating her charge, the EEOC

was unable to conclude that Ajilion had discriminated against Lampkin, and, on September 11, 2012, it dismissed her complaint, and issued a "Right to Sue Letter."  (Defendant's Motion, Ex. B).  Plaintiff admits that she received this letter on September 15, 2012.  (Plaintiff's Response at ¶ 3).  That notice was explicit that Plaintiff "must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date [she] *receive[d]* **this Notice**."  (Case  No. 12-mc-00742, Docket Entry # 1, Ex. 2); (Defendant's Motion, Ex. B) (emphasis in original).  The right to sue letter further advised Lampkin that "Filing this Notice is not enough.  You must file a 'complaint' that contains a short statement of the facts of your case which shows that you are entitled to relief."  (*Id*.).

On December 7, 2012, eighty-three days following her receipt of the EEOC right to sue letter, Lampkin filed an "Application to Proceed in District Court Without Prepaying Fees or Costs ["IFP application"]."  (Case No. 12-mc-00742, Docket Entry # 1).  Plaintiff attached the right to sue letter to that application, but she did not include any pleadings.  (*Id*. at Ex. 2). Because no complaint was filed with the IFP application, no court action commenced.  Instead, a miscellaneous case number, No. 4:12-mc-00742, was assigned to Plaintiff's IFP application. (*Id*.).  On December 10, 2012, Plaintiff was ordered to file "a proposed Complaint" on or before January 7, 2013. (Case No. 12-mc-00742, Docket Entry # 2). On December 21, 2012, Plaintiff did so, filing a "Proposed Complaint," which named Ajilion as Defendant.  (*Id*. at Docket Entry # 3).  Six days later, on December 27, 2012, Plaintiff's IFP application was granted and the "miscellaneous case" was terminated.[1]   (*Id*. at Docket Entry #4).   Plaintiff's "Proposed

---

[1] There is a notation on the current docket sheet, at Docket Entry # 1, that "IFP [was] granted by Judge Nancy Atlas)."  (Docket Entry #1).  However, Judge Atlas' order granting Plaintiff's IFP application was not attached, nor was the right to sue letter.  *Compare* (Docket Entry #1), *with* (Case No. 12-mc-00742, Docket Entry # 1, Ex. 2 & Docket Entry # 4).  In fact, the only document generated under the original case number is Judge Atlas' order directing Plaintiff to file a complaint before January 7, 2013.  That order was attached to Plaintiff's Proposed Complaint, following 23 pages of exhibits to that pleading.  (Docket Entry # 1 at 27).

Complaint" was then docketed under the current case number, and assigned to this court. (Plaintiff's Proposed Complaint, Docket Entry # 1).

On April 10, 2013, Plaintiff filed a "Joint Discovery/Case Management Plan" in which she asserted that, "Defendant … chose not to participate in this matter until they have been properly served with Plaintiff's Complaint, per email received from Ms. Jenny Lovoi." (Docket Entry # 4). An email from Jenny Lovoi, a "Staffing Manager" with Ajilon, is set out below:

> Thank you for your message. Our legal department has indicated that they will provide the name and contact information for the lawyer who will be representing Ajilon in the lawsuit once you have properly served the company as required by the Federal Rules of Civil Procedure. To date, the company has not been served with your lawsuit.

(Docket Entry # 4, Ex. 1). The following week, on April 17, 2013, Plaintiff was ordered to "file proof of service no later than **May 17, 2013**." (Docket Entry # 5) (emphasis in original). Instead, on May 10, 2013, Lampkin filed a different "Original Complaint" under this cause number. (Original Complaint, Docket Entry # 6). On the "Certificate of Service" attached to that complaint, Lampkin stated that,

> Plaintiff hereby Certifies that a true and exact copy of this **ORIGINAL COMPLAINT** is being served to the Defendant, Ajilon Professional Staffing through the individuals provided on the EEOC Dismissal and Notice of Rights to: Ms. Jenny Lovoi, Staffing Manager at, Ajilon Professional Staffing, ... Houston, Texas … and Ms. Elizabeth Murphy, Sr. Paralegal, at Adecco Group NA,[2] … Melville, NY, both by certified mail, return receipt requested.

(Original Complaint at 10). On the same day, May 10, 2013, the Clerk of Court issued a summons to Ms. Jenny Lovoi. (Defendant's Motion at 2, Ex. F). However, neither Ms. Lovoi nor Elizabeth Murphy is authorized to receive service on behalf of Ajilion. (Defendant's Motion, Ex. I). For that apparent reason, Defendant filed the current motion, on June 5, 2013, arguing, in part, that Lampkin's Complaint should be dismissed for insufficient process and

---

[2] Adecco Group is Ajilon's parent company. (Defendant's Motion, Ex. I).

insufficient service of process, under Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil

Procedure.  (Defendant's Motion at 3-6).

> Notably, after Defendant filed its motion, the court issued the following order:
>
> In accordance with the order granting the plaintiff's application under 28 U.S.C.
> 1915 to proceed without prepaying fees or costs, (Misc. Case No. H-12-742,
> Docket Entry No. 4), the clerk is ordered to issue a summons.  The United States
> marshal is ordered to serve the summons with a copy of the complaint and this
> order on the defendant.  The United States will advance the costs of service.

(Docket Entry # 15).  Service was accepted by Ajilon, on July 3, 2013.  (Docket Entry #

18).  Subsequently, Defendant re-urged a dismissal of Lampkin's complaint, because she

purportedly failed to comply with the court's orders regarding service.  (*Id*. at 2).

In the current motion, Ajilion also contends that the complaint should be dismissed,

under Rule 12(b)(6), because Plaintiff failed to exhaust the administrative remedies available

under Title VII and the ADA.  Defendant points out that, in her EEOC charge, Lampkin did not

"check the box[es]" complaining of race or gender discrimination, or "make any allegation of

such unlawful discrimination." (Defendant's Motion at 9).   Defendant further insists that

Lampkin did not file her complaint within the required 90 day period following receipt of the

Right to Sue letter, and so her suit is subject to dismissal for that reason as well.  (Defendant's

Motion at 6-8).  Finally, Defendant contends that the Fifth Circuit does not recognize a claim for

"disability association."   (Defendant's Motion at 8).   In making this argument, Ajilion

emphasizes the Fifth Circuit's recent statement that it "has not explicitly recognized a cause of

action for discrimination based on association with a handicapped individual." (*Id*.).  In addition,

Defendant insists that "even if associational disability were a recognized cause of action in the

Fifth Circuit, Lampkin's allegations in her complaint do not rise above a speculative level and

are no more than conclusions, not entitled to the assumption of truth."  (*Id*.).

*Factual Background*

Plaintiff has filed two complaints in this action. Clearly, though, her second-filed, "Original Complaint," is the relevant pleading to which Defendant's motion is directed.  *See Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 285 (5th Cir. 2013) (referring to the plaintiff's second amended complaint as "the live complaint"); *accord Morgan v. Swanson*, 659 F.3d 359, 367 (5th Cir. 2011); *O'Neal v. City of San Antonio*, 344 Fed. Appx. 885, 887 n. 1 (5th Cir. 2009). Plaintiff's initial pleading, the "Proposed Complaint," however, includes facts that are not recited in her "Original Complaint."  (Proposed Complaint, Docket Entry # 1); (Original Complaint, Docket Entry # 6).  For that reason, allegations from both documents have been cited to garner the relevant background for Plaintiff's claims.

Plaintiff alleges that, on February 27, 2012, Ajilon advertised a number of administrative positions that were available in the greater Houston area.  (Plaintiff's Proposed Complaint at 1). Lampkin states that she completed an online application for one of them, as a "Legal Assistant." She claims that, on February 29, 2012, Megan Hiller ("Ms. Hiller"), a Staffing Manager with Ajilion, invited her to interview for that position.  (*Id.*).  The interview took place on March 1, 2012.  Lampkin claims that, during the interview, Ms. Hiller was "pleased with [her] education, resume, and work experience."  (Plaintiff's Proposed Complaint at 2).  Ms. Hiller reportedly "explained the details of the assignment, and [stated] that [Plaintiff] was a perfect match" for the job. (*Id.*).

Plaintiff alleges that she then asked Ms. Hiller about the company's "flexibility," explaining that her child required speech and occupational therapy twice a week.  (Plaintiff's Original Complaint at ¶ 9).  Those therapy sessions were scheduled at 5:00 pm on Wednesdays, and at 6:00 pm on Thursdays.  Lampkin told Ms. Hiller that she would have "to leave a little bit earlier on those days" to get her child to the appointments.  (Plaintiff's Proposed Complaint at 2).

Plaintiff told Ms. Hiller that she could "mak[e] up missed time by working late, coming in early[,] [] working through … lunch[,] … and being available for some weekends." (Plaintiff's Original Complaint at ¶ 10). Plaintiff claims that Ms. Hiller documented her request for flexible work hours, and included it with her file.

According to Plaintiff, however, after learning of the request for a flexible schedule, Ms. Hiller purportedly "became less excited for [Lampkin]." (Plaintiff's Proposed Complaint at 2). Lampkin claims that Ms. Hiller told her that "working downtown may not be a good option for you." (Plaintiff's Original Complaint at ¶ 12). Nevertheless, Ms. Hiller agreed to submit Plaintiff's application, and promised to contact her should any other positions become available. (*Id*. at 3).

Lampkin did not hear from Ms. Hiller for more than three weeks. On March 26, 2012, Plaintiff emailed Ms. Hiller to inquire about the status of her application. (Plaintiff's Complaint, Ex. 5). Ms. Hiller responded the next day that she was "unable to send [Lampkin's] resume [because] the position was filled by another agency." (Plaintiff's Proposed Complaint, Ex. 6). Ms. Hiller also told Plaintiff that she would "keep [her] information and let [her] know once another position comes across [her] desk." (*Id*.). Plaintiff alleges here that, after her interview with Ms. Hiller, Ajilion continued to advertise four positions for which she was qualified, yet Ms. Hiller never contacted her about those jobs. (Plaintiff's Proposed Complaint at 2 & Exs. 7-8). Lampkin contends that Ms. Hiller's conduct was discriminatory. Plaintiff believes that she was discriminated against because of her "association" with a disabled child. (Plaintiff's Original Complaint at 6).

But Lampkin also complains of treatment that she received from another Ajilon employee. In April 2012, Plaintiff again wished to apply "for the same positions [that she] interviewed for with [Ms. Hiller]." (Plaintiff's Original Complaint at 4). To do so, she emailed

Katherine Byrd ("Ms. Byrd"), a "Medical Staffing Manager" with Ajilion, on April 19, 2012.  In

that email, Plaintiff wrote:

> Hello Katherine,
> I would like to submit my resumes [sic] for office administration positions with
> your staffing agency.  Please feel free to contact me should you have positions that
> match my education and skills.
> Thank you,
> Renee Lampkin

(Plaintiff's Proposed Complaint at Ex. 9).  On April 23, 2012, Ms. Byrd replied that she was

"interested in talking to [Lampkin] [] about [her] skill set and what [she was] looking for in [her]

next position." (*Id*.).  Lampkin alleges that she returned Ms. Byrd's call the same day.  During

their telephone conversation, Ms. Byrd reportedly began "mak[ing] arrangements for an

interview with Plaintiff."  (Plaintiff's Original Complaint at ¶ 23).  Lampkin states that she told

Ms. Byrd that she had already "interviewed with Ms. [Hiller] for the same positions."

(Plaintiff's Original Complaint at ¶ 23).  Plaintiff then alleges that "[Ms. Byrd] looked up

Plaintiff's information … and stated [that] nothing was available."  (Plaintiff's Original

Complaint at ¶ 24).  According to Lampkin, "it seemed that [Ms. Byrd] may have seen that there

was an EEOC Complaint filed by [] Plaintiff against Ajilion."[3]  (*Id*.).  Reportedly, Ms. Byrd

"quickly ended the phone call," and did not "let[] [] Plaintiff inquire about other positions."

(*Id*.).  The next day, Plaintiff emailed Ms. Byrd to inform her that she remained available for a

wide range of administrative assignments.  (Plaintiff's Original Complaint at 5).  Plaintiff wrote

the following:

> Hello Kate, I spoke with you regarding my resume and legal assistant assignments.
> I am pretty much open for office administration, data entry and clerical [work].

---

[3] It is unclear, however, whether there had, in fact, been an EEOC complaint filed at that time.  In Plaintiff's
Proposed Complaint, she alleges that, on April 21, 2012, she "faxed a complaint to [the] EEOC," based on Ms.
Hiller's conduct. (Plaintiff's Proposed Complaint at 2).  However, Plaintiff omitted this statement from her Original
Complaint, and instead claimed to have "filed a timely Complaint with [the] EEOC … on May 4, 2012."  *See*
(Plaintiff's Original Complaint at ¶ 20).  The actual charge of discrimination shows that it was filed on May 4, 2012.
(Case No. 12-mc-00742, Docket Entry # 1, Ex. 2); s*ee also* (Defendant's Motion, Ex. A).

> Please let me know if you [have any] assignments that match my skills and education.

(Plaintiff's Original Complaint, Ex. 11).   Ms. Byrd never responded to Plaintiff's email. (Plaintiff's Amended Complaint at 5).

From these complained of events, Plaintiff lodges claims for "Disability Association Discrimination," as well as for race and gender discrimination, under Title VII and the ADA. (Original Complaint at 8).  She seeks $1.2 million in damages, reasonable attorney's fees, court costs, and interest.   (*Id.*).   In response, Defendant filed its motion to dismiss, arguing that Lampkin's discrimination claims should be dismissed, under Rule 12(b)(6) for failure to state a claim on which relief can be granted, as well as under Rules 12(b)(4) and 12(b)(5) for insufficient process and insufficient service of process.   (Defendant's Motion at 6).   From a review of the applicable law, Defendant's motion should be GRANTED, in part, and DENIED, in part.

**Standard of Review**

*12(b)(6)*

In considering a motion to dismiss, under Rule 12(b)(6), the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir.2004)); *accord In Re McCoy,* 666 F.3d 924, 926 (5th Cir.2012). However, the court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir.2005); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 677–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* at 678

(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *accord Wilson v. Birnberg,* 667 F.3d 591, 595 (5th Cir.2012). A claim is facially plausible " 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Iqbal*, 556 U.S. at 678).  The standard of plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678–79; *accord Wilson,* 667 F.3d at 600. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.,* 615 F.3d 412, 417 (5th Cir.2010) (quoting *Iqbal,* 556 U.S. at 678). In such an instance then, the complaint is subject to dismissal under Rule 12(b)(6). *See id.*

On the other hand, pleadings filed by a *pro se* litigant are " 'to be liberally construed,' " and " 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus*, 127 S. Ct. 2197 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To withstand a motion to dismiss, however, the factual allegations in the complaint still "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 127 S. Ct. at 1965.  A complaint will be dismissed for failure to state a claim only if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974 (abrogating the former Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**Discussion**

Plaintiff invokes Title VII and the ADA in alleging that Ajilon discriminated against her because of her race and gender, and because of her association with a disabled child.  (Plaintiff's Proposed Complaint at 3); (Plaintiff's Response at 6).  There is no dispute, however, that those

laws require claimants to exhaust their administrative remedies before seeking judicial relief. *McClain v. Lufkin Industries, Inc.,* 519 F.3d 264, 273 (5th Cir. 2008); *see also* 42 U.S.C. § 12117(a) (incorporating Title VII "procedures" to claims brought under the ADA). A claim is "exhausted" if an individual files a timely complaint with the Equal Employment Opportunity Commission ["EEOC"], the claim is dismissed by that agency, and the agency informs her of her right to sue in federal court. *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 379 (5th Cir.2002). This allows the EEOC to investigate and, if appropriate, to negotiate a resolution with an employer. *McClain,* 519 F.3d at 273. In states, such as Texas, that have their own administrative procedures, employees have 300 days from the date of an alleged discriminatory act in which to file a claim with the EEOC.  *See Huckabay v. Moore,* 142 F.3d 233, 238 (5th Cir.1998).  If a plaintiff does not file a claim within that 300 day period, it is barred. *Barrow v. New Orleans Steamship Association,* 932 F.2d 473, 476-477 (5th Cir.1991). Once a claim has been presented to the EEOC, and a plaintiff receives a right to sue letter from that agency, she has 90 days in which to file suit on that claim, or that right is lost. *Price v. Choctaw Glove & Safety Co., Inc.,* 459 F.3d 595, 598 (5th Cir. 2006).

Here, Ajilon argues that Plaintiff's Title VII claims should be dismissed because she did not exhaust the administrative remedies available to her.  Ajilon points out that "Lampkin did not check the box for race or gender discrimination or make any allegation of such unlawful discrimination in her charge."  (Defendant's Motion at 9).  It is true that, in her EEOC charge, Lampkin designated only disability discrimination as her complaint.  (Case No. 12-mc-00742, Docket Entry # 1, Ex. 2); (*see also* Defendant's Motion, Ex, A).  In fact, the entirety of Plaintiff's complained of conduct is set out below:

     I.       On February 26, 2012, I submitted my resume to be considered for a legal assistant position through Ajilon Professional Staffing.  I was interviewed by Megan Hiller on March 1, 2012.  I completed the required paperwork

and advised of my need for an accommodation.  I explained that I had a special needs child that required therapy twice a week.

II.   After the interview, I understood that my resume and accommodation requests would be submitted to the hiring organization for consideration. On March 27, 2012, I was advised by Ms. Hiller that my paperwork was never submitted because the position had already been filled.  I believe that I was not considered for the position due to my request for time off to care for my child with a disability.

III.   I believe that I have been discriminated against due to a disability as defined by the Americans with Disabilities Act of 1990, as amended.

(*Id*.).   From this recitation, there is no implication of any discrimination on the basis of Lampkin's race or gender.

"One of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.' "  *Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 878-79 (5th Cir. 2003) (quoting *EEOC v. Shell Oil Co.,* 466 U.S. 54, 77 (1984)).   Indeed, in *Manning v. Chevron Chemical Company*, the plaintiff did not "check the box labeled 'disability'" on his original EEOC charge, and more than 300 days from the date of the alleged discriminatory treatment had elapsed.  *Manning*, 332 F.3d 874, 879-80 (5th Cir. 2003).   The Fifth Circuit observed that, because "Manning did not file a timely charge of disability discrimination … in order to bring a disability discrimination claim … he should have filed a new charge of discrimination."  *Id*. at 880.   The court held that "[b]ecause he failed to do so, his []ADA claim [wa]s [] time-barred."   Similarly, in her EEOC charge, Lampkin made no reference to any discriminatory treatment on the basis of her race or gender.   Without such claims, Ajilon was not *"*adequately notif[ied] []about the nature of the charges against [it]." *Manning*, 332 F.3d at 878-79.

Further, in her charge, Plaintiff claimed that she last suffered from Defendant's discriminatory conduct on March 27, 2012.  (Case No. 12-mc-00742, Docket Entry # 1, Ex. 2); (*see also* Defendant's Motion, Ex, A).   There is no question that more than 300 days have

elapsed since that date.  *Id*.; *see also Huckabay v. Moore,* 142 F.3d 233, 238 (5th Cir.1998).  For

that reason, Plaintiff may not raise such allegations now, and her claims for race and gender

discrimination, under Title VII, should be dismissed with prejudice to a refiling.

*The Ninety-Day Filing Deadline*

Defendant has also moved to dismiss Lampkin's case, because she did not timely file suit

on her claims of discrimination. (Defendant's Motion at 6); (Defendant's Reply at 5).  Defendant

argues that the filing of Plaintiff's right to sue letter in the district court did not suffice to

commence this action.  (Defendant's Reply at 7).  It is true that the filing of a right to sue letter

does not commence a civil action.  *Baldwin County Welcome Center v. Brown*, 466 U.S. 147,

150 (1984).  In fact, the Supreme Court found dismissal appropriate when the plaintiff filed her

right to sue letter within the 90 day period, but did not file her complaint until after that period

had passed.  *Baldwin*, 466 U.S. 147, 150 (1984).  In *Baldwin*, the Court emphasized that Rule 3

of the Federal Rules of Civil Procedure states that a "civil action is commenced by filing a

complaint with the court."  *Id*. at 150.  The Court pointed out that, a "complaint must contain,

inter alia, 'a short and plain statement of the claim showing that the pleader is entitled to relief,' "

and it held that a right to sue letter does not satisfy that requirement.  *Id*. (citing Fed. Rule Civ.

Proc. 8(a)(2)).  In reaching that conclusion in *Baldwin*, however, the Court commented that it

found nothing "in the record to call for the application of the doctrine of equitable tolling."  *Id*. at

151.  It then distinguished the case before it from those actions in which the plaintiff was

justified in failing to file a timely complaint.  *Id*.; *see also* Wright and Miller, 4 *Federal Practice*

*& Procedure*, § 1054 (3d ed.).

A sample instance cited is one in which "the court has led the plaintiff to believe she had

done everything required of her."  *Baldwin*, 147 U.S. at 151.  To illustrate this exception, the

Court pointed to the Tenth Circuit opinion, *Carlile v. S. Routt Sch. Dist*, 652 F.2d 981 (10th Cir.

1981), in which the plaintiff filed her right to sue letter within the 90 day period, and the court instructed her to file a "motion to commence an action to proceed without payment of fees and costs." *Id.* at 983.  The district court added that " 'th[e] action shall be deemed commenced upon filing of the aforesaid Motion.' " *Id.* at 983.  In reliance on this statement, the plaintiff's attorney filed her complaint outside of the ninety-day period. *Id.* at 986.  The court held that, because of the attorney's reliance on the district court's order, it considered the plaintiff's complaint to be timely filed. *Id.*

Likewise, it appears here that plaintiff may have relied on the court order as extending the time in which she was allowed to file her complaint.  Plaintiff acknowledged receiving her right to sue letter on September 15, 2012, and so she had until December 14, 2012, to file her claims within the prescribed 90-day period.  *Price,* 459 F.3d at 598.  On December 7, 2012, Plaintiff filed an IFP application with the district court, along with her right to sue letter.  (Case No. 12-mc-00742, Docket Entry # 1). While this filing did not commence the action, the court ordered Plaintiff, on December 10, 2012, to file "a proposed Complaint" on or before January 7, 2013. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 150 (1984); (Case No. 12-mc-00742, Docket Entry # 2). In doing so, the court appears to have "extend[ed] the time within which she could file a complaint." *Carlile*, 652 F.2d at 986. Moreover, Lampkin, here, is proceeding *pro se*, and in treating her complaint with the deference required, it could be said that "the court [] led [her] to believe she had done everything required of her." *Baldwin*, 147 U.S. at 151; *see also Carlile*, 652 F.2d 981; *see also Erickson v. Pardus*, 127 S. Ct. 2197 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Because she filed her "Proposed Complaint" on

14

December 21, 2012, before the court imposed deadline of January 7, 2013, equitable tolling should apply to preserve those claims.[4]  *See Baldwin*, 147 U.S. at 151.

It is RECOMMENDED then that Defendant's motion, under Rule 12(b)(6), for Plaintiff's failure to file within the prescribed 90-day period, be DENIED.

**Plaintiff's "Associational Discrimination" Claim**

Plaintiff also claims that she suffered discrimination because of her "association" with a disabled child.  The basis for a claim of "associational discrimination" is found in an ADA provision that prohibits the following conduct:

> excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.

*See* 42 U.S.C. 12112(b)(4).  As Defendant points out, the Fifth Circuit recently stated that it "has not explicitly recognized a cause of action for discrimination based on association with a handicapped individual, nor ha[s] [it] described what such a claim requires."  *Grimes v. Wal-Mart Stores Texas, LLC*, 505 Fed. Appx. 376, 380 n. 1 (5th Cir. 2013).  Despite that statement, however, the court observed that "[d]istrict courts within this circuit have [] recognized a cause of action for associational discrimination."  *Id.* (citing *Spinks v. Trugreen Landcare, LLC,* 322 F.Supp.2d 784, 796 (S.D.Tex.2004); *Moresi v. AMR Corp.,* No. CA 3:98–CV–1518–R, 1999

---

[4] Plaintiff subsequently filed a new version of her complaint, the "Original Complaint."  (Docket Entry # 6).  Under Rule 15(c) of the Federal Rules of Civil Procedure, an "amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct … in the original pleading."  FED. R. CIV. P. 15(c).  Defendant does not argue that Plaintiff's "Original Complaint" does not arise from the same conduct detailed in her "Proposed Complaint." *See* (Defendant's Motion); (Defendant's Reply). Instead, Ajilon contends that, because it "has not been served with a copy of the Proposed Complaint … Lampkin's Original Complaint cannot be characterized as an amended complaint."  (Defendant's Reply at 6). Defendant, however, cites no law to support this argument. The Fifth Circuit has stated that, "the purpose of Rule 15(c) is to 'help, not hinder, persons who have a legal right to bring their problems before the courts.' " *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010).  In receiving the Original Complaint, Defendant obtained notice of the entire action, and allowing Plaintiff's Original Complaint to relate back to her Proposed Complaint will not prejudice Ajilon at this point. *See Sanders-Burns*, 594 F.3d 366, 380 (allowing an amended complaint to relate back to the original complaint because the defendant "had sufficient notice of the lawsuit such that he is not prejudiced in defending on the merits").

WL 680210, at *2–*3 (N.D.Tex. Aug. 31, 1999).  The court then detailed the "test laid out in th[o]se cases," noting that, if such a cause of action exists,

> A prima facie case of associational discrimination would require that [] Plaintiff show (1) her qualification for the job, (2) an adverse employment action, (3) the employer's knowledge of the employee's disabled relative, and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action.[5]

Id. at 380.  In an abundance of caution then, Plaintiff's claim will be addressed under this framework.  Id. at 380 n. 1.

To satisfy the first element of a putative claim for "associational discrimination," a plaintiff must show "her qualification for the job" that was allegedly denied to her.  Grimes v. Wal-Mart Stores Texas, LLC, 505 Fed. Appx. 376, 380 n. 1 (5th Cir. 2013).  Here, Lampkin has not shown the specific requirements of the legal assistant's job that she sought.  However, she does claim that Ms. Hiller described her as "a perfect match" for the job.  (Plaintiff's Proposed Complaint at 2).  She also provided her resume which shows that she has received two associate degrees from Lone Star College, with specializations in "Legal Office Administration," and as a "Paralegal."  (Plaintiff's Proposed Complaint, Ex. 12).  There is no question that proof of Lampkin's qualifications would be required at the summary judgment stage.  FED. R. CIV. P. 56(c).  But, to survive a motion to dismiss, a "heightened fact pleading of specifics" is not so required.  Bell Atlantic Corp., 550 U.S. 554 (2007).  At this stage of the litigation, then, Lampkin's allegations suffice to show that she was qualified for the position of a legal assistant. Id. at 1964-65.

---

[5] The Grimes court further cautioned, however, that its "opinion should not be construed as recognizing a cause of action for associational discrimination based on disability." Grimes v. Wal-Mart Stores Texas, LLC, 505 Fed. Appx. 376, 380 n. 1 (5th Cir. 2013).

Plaintiff must also allege that she suffered an adverse employment action. *Grimes v. Wal-Mart Stores Texas, LLC*, 505 Fed. Appx. at 380; *see also Spinks v. Trugreen Landcare, LLC*, 322 F.Supp.2d 784, 796 (S.D. Tex. 2004). In claims of discrimination, the Fifth Circuit recognizes only "ultimate employment decisions" as actionable. *See McCoy v. City of Shreveport,* 492 F.3d 551, 559–60 (5th Cir.2007). "Ultimate employment decisions" include "hiring, granting leave, discharging, promoting, or compensating." *Id*. Because Lampkin's discrimination claim is based on Ajilon's alleged failure to hire her for the legal assistant position, she has stated a sufficient claim that she suffered an adverse employment action. *Id*.

Lampkin must next allege that Ajilon "knew of her disabled relative" to state a valid claim. *Grimes*, 505 Fed. Appx. at 380; *see also Spinks,* 322 F.Supp.2d at 796. In her Original Complaint, Plaintiff alleges that she "disclose[d] to Ms. [Hiller] information in regards to having a special needs child that has a therapy schedule for speech and occupational [needs] [] two (2) days per week." (Original Complaint at ¶ 9). In drawing all inferences in the light most favorable to Lampkin, this allegation imputes knowledge of "her disabled relative" to Defendant. *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007); *see also In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012).

Finally, there must be an allegation that "the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action." *Grimes*, 505 Fed. Appx. at 380; *see also    Spinks,* 322 F.Supp.2d at 796. Here, Lampkin alleges that, following her "disclosure" to Ms. Hiller that a schedule accommodation was necessary, the following sequence of events occurred:

> Ms. [Hiller] documented this schedule [request] on a sheet of paper, and placed it on top of Plaintiffs' [sic] application, and then said she would submit Plaintiff's resume and scheduled appointments to them.

> Ms. [Hiller] then stated to [] Plaintiff that "maybe working downtown may not be a good option for you."
>
> Plaintiff then stated to Ms. [Hiller] that she had no problem with working downtown.
>
> Ms. [Hiller] said again that she would submit Plaintiff's resume along with the schedule for the appointments, and that she would get back with the Plaintiff with the response … [T]wenty-five (25) days [after] the interview, … Plaintiff submitted an email to Ms. [Hiller] to get the status of those positions, … Ms. [Hiller] responded … that she did not submit [] Plaintiff's resume because the positions had been filled by another agency, and that she would keep Plaintiff's information for when another position came across her desk …

(Original Complaint at 3, 6).  And Plaintiff complains of the treatment she received from Ms. Hiller's colleague, Katherine Byrd, as well.  (*Id*. at 4-5).  Lampkin alleges that, during their telephone conversation, Ms. Byrd "proceeded to make arrangements for an interview," but that after "look[ing] up [Lampkin's] information in the computer …  she quickly … stated nothing was available."  (*Id*. at 5).  Lampkin then states that "Ms. [Byrd] quickly ended the phone call, not letting [] [her] inquire about other positions."  (*Id*.).

Finally, Plaintiff contends that she was not considered for the available jobs "because of her relationship with an individual with a disability."  (Original Complaint at ¶ 28).  With this statement, Plaintiff has adequately stated a claim that her child's special needs were the determining cause of Ajilon's failure to hire her.  Whether this belief proves to be true, is not an appropriate inquiry at this stage of the pleadings.  *See Twombly*, 127 S. Ct. at 1974; *see also Lampkin v. Staffmark Holdings, Inc*., 2013 WL 4735535 (S.D. Tex. Sept. 3, 2013) (Werlein, J.).  On the whole, Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.  For that reason, it is RECOMMENDED that Ajilon's motion to dismiss Plaintiff's "associational disability" claim be DENIED.

*Defendant's Motions to Dismiss Under Rules 12(b)(4) and (5)*

Under Rule 12(b) of the Federal Rules of Civil Procedure, a defendant may challenge an action for "insufficient process" and "insufficient service of process." FED. R. CIV. P. 12(b)(4), (5). In general, "[a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service," while a "Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint." 5B Wright & Miller, *Federal Practice & Procedure*: *Civil* 3d § 1353, cited in *Gartin v. Par Pharmaceutical Companies, Inc.*, 289 Fed.Appx. 688, 691-692 n. 3 (5th Cir. 2008). The party effecting service has the burden to prove that any successful service was actually valid. [6] *Quinn*, 470 Fed. Appx. at 323(citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)).  Further, the Fifth Circuit has made it clear that "*[p]ro se* status and ignorance of the relevant rules of service do not excuse a plaintiff's failure to effect service." *Bartz v. Adrian*, 169 Fed. Appx. 241 (5th Cir. 2006) (citing *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988)); *see Propes v. Quarterman*, 573 F.3d 225, 231 (5th Cir. 2009) (citing *United States v. Petty*, 530 F.3d 361, 365-66 (5th Cir. 2008)).

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served with process in accordance with Federal Rule of Civil Procedure 4," or has waived service. *Naranjo v. Universal Sur. Of Am.*, 679 F.SUpp.2d 787, 795 (S.D.Tex. 2010) (Jack, J.) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)). If the court lacks personal jurisdiction, that may serve as " 'grounds for denying audience to a case on the merits.' " *Pervasive Software Inc.,* 688 F.3d at 232 (quoting *Ruhrgas AG*, 526 U.S. at 584-84).  The court cannot proceed to adjudicate claims against a

---

[6] The proper method of effecting service is detailed in Rule 4 of the Federal Rules of Civil Procedure.

Case 4:12-cv-03779   Document 28   Filed in TXSD on 11/01/13   Page 20 of 22

defendant who has not been properly served, unless there has been a waiver of the service requirement. *See Naranjo,* 679 F.Supp.2d at 795.

Under the Federal Rules, once a complaint has been filed, a plaintiff has 120 days in which to serve all defendants, and to show proof of that service to the court. *See* FED. R. CIV. P. 4(l)(1), (m). Rule 4 also provides, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

*Id.* Further, Rule 4(h) mandates that a corporation must be served either under the state law governing service of an individual, or by delivering a copy of the summons and the complaint to an officer, managing agent, or to any other agent authorized to receive service. FED. R. CIV. PROC. 4(h). Texas law also allows for service by Unites States mail. *See* TEX. R. CIV. P. 103.

It is significant here that, "[s]pecial rules govern the procedure for service of process in cases involving *in forma pauperis* plaintiffs." *Lindsey v. U.S. Railroad Retirement Bd.*, 101 F.3d 444, 446 (5th Cir. 1996) (citing 28 U.S.C. § 1915); *accord Ellibee v. Leonard*, 226 Fed. Appx. 351, 358-59 (5th Cir. 2007). Under 28 U.S.C. § 1915(d), when a plaintiff proceeds *in forma pauperis*, "officers of the court shall issue and serve all process, and perform all duties." This precept aligns with Rule 4(c)(3) of the Federal Rules of Civil Procedure, which provides that, "[a]t the plaintiff's request, the court may order that service be made by a United States marshal … [and] [t]he court must so order if the plaintiff is authorized to proceed in forma pauperis." FED. R. CIV. P. 4(c)(3). The Fifth Circuit has recognized that, " 'Rule 4(c)[] and 28 U.S.C. § 1915[] stand for the proposition that … the court is *obligated* to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendant[]' " *Lindsey*, 101 F.3d at 446 (emphasis in original) (quoting *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)). In

*Lindsey v. U.S. Railroad Retirement Board*, the plaintiff's failure to effect service was due to "contingencies … [not] within [his] control," so the court found that it was an abuse of discretion by the trial court to have dismissed his case.

Similarly, here, Plaintiff's difficulty in serving Defendant was complicated by the circumstances of her *pro se* status.  When this case was initially given the current docket number, the order granting Plaintiff's IFP status had not been filed with her Proposed Complaint. *Compare* (Docket Entry # 1), *with* (Case No. 12-mc-00742, Docket Entry #4).  A few months later, in her "Joint Discovery/Case Management Plan," Plaintiff informed the court that, despite her "more than ten (10) attempts" to do so, Defendant had not been properly served.  (Docket Entry # 4).  The following week, the court ordered Lampkin to "file proof of service no later than **May 17, 2013**."  (Docket Entry # 5) (emphasis in original). On May 10, 2013, Plaintiff filed her "Original Complaint," and in her "Prayer for Relief," asked the court to "cite[] and serve[]" Ajilon "with a copy of this Complaint."  (Docket Entry # 6 at 8).  Six weeks later, on June 29, 2013, "in accordance with the order granting the plaintiff's [IFP] application," the court ordered a United States marshal to serve a copy of the complaint on Defendant.  (Docket Entry # 15) (citing Misc. Case No. H-12-742, Docket Entry # 4).  Ajilon was subsequently served by the United States Marshals Service, and on July 3, 2013, Defendant accepted service of the complaint.  (Docket Entry # 18).  Because Ajilon has now been properly served in this lawsuit, it is RECOMMENDED that Defendant's motion, under Rules 12(b)(4) and (5), be DENIED as moot.

**CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that Defendant's motion to dismiss be **GRANTED** as to Plaintiff's Title VII claims for discrimination on the basis of her race and gender, and **DENIED** as to Plaintiff "associational disability" claim, under the ADA.

It is further **RECOMMENDED** that Defendant's motion, under Rule 12(b)(6), for Plaintiff's failure to file within the prescribed 90 day filing deadline, be **DENIED**.

It is **RECOMMENDED** that Defendant's motion to dismiss, under Rules 12(b)(4) and (5), be **DENIED** as moot.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 1st day of November, 2013.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**